PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  5:25-cr-360 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DARRON PORTIS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 30] |
| | ) | |

Pending before the Court is Defendant Darron Portis' Motion to Suppress.  ECF No. 30.

The Government opposes the motion.  ECF No. 32.  The Court, having considered the parties'

briefs, applicable law, and the evidence and arguments presented at the evidentiary hearing

conducted on December 16, 2025, denies Defendant's Motion to Suppress and further concludes

that Defendant is not entitled to an evidentiary hearing regarding the validity of the probable

cause affidavit because he has not satisfied the two-pronged standard established in *Franks v.*

*Delaware*, 438 U.S. 154 (1978).

## I.    FACTUAL BACKGROUND

On January 23, 2025, Akron Police Narcotics Detective Drew Reed, the affiant, obtained

a search warrant to search a Kelly Avenue residence for evidence of drug trafficking.  ECF No.

30-1.  The affidavit states that there is "good cause to believe that evidence" of drug trafficking

will be found at a Kelly Avenue residence in Akron, Ohio.  ECF No. 30-1.  Such evidence

includes:

> Controlled substances such as fentanyl, cocaine, methamphetamine,
> marijuana, deadly weapons, such as fire arms and ammunition;

(5:25CR360)

> records, such as documents receipts, ledgers or other instruments (including those stored electronically) relating to illicit drug transaction; mail and other documents showing an indicia of control over the property; currency, safes, and other lockboxes; computers, electronic tablets, removable hard drives and storage devices, cellular phones, cameras (and the electronically stored data and information found on any of the above listed devices/hardware); [a]ny other evidence of **TRAFFICKING IN CONTROLLED SUBSTANCES or POSSESSION OF CONTROLLED SUBSTANTICES[.]**

ECF No. 30-1.  The affidavit describes the place to be searched as a white, two-story dwelling with white trim and black shutters.  The affidavit also indicates that the residence's curtilage, including vehicles, and any persons found within the home are also to be searched.  ECF No. 30-1.

The affidavit provides information collected from police surveillance of Defendant and the Kelly Avenue residence; and details Defendant's prior criminal history of drug possession, drug trafficking, felonious assault, and kidnapping.  ECF No. 30-1, ⟩ 23.  The Akron Police Department ("APD") began investigating Defendant drug trafficking activities and the Kelly Avenue residence in December 2024.  The affidavit indicates that "within the past 10 days" of submitting the search warrant application, a confidential informant ("CS-1") notified detectives that Defendant was in possession of and trafficking in fentanyl from a Kelly Avenue address in Akron, Ohio.  ECF No. 30-1, ⟩ 16.  The affidavit indicates CS-1 has previous provided APD with information about corroborated drug trafficking activities in Akron, Ohio.  CS-1 is assisting law enforcement in exchange for monetary compensation.  ECF No. 30-1, ⟩ 9.

Law enforcement conducted a controlled purchase of fentanyl from Defendant, in concert with CS-1.  ECF No. 30-1, ⟩ 17.  Prior to the controlled buy, CS-1 was searched by detectives, who determined he did not have any drugs or currency.  Detectives then provided CS-1 with APD funds for the controlled buy.  ECF No. 30-1, ⟩ 17.  During the evidentiary hearing, the

(5:25CR360)

Government confirmed that CS-1 had been given three, $20.00 bills with the following serial numbers: PE50968362G (Bill A); PF38062918G (Bill B); and PA35441809B (Bill C). *See* ECF No. 37-1.  While under constant surveillance by law enforcement, CS-1 entered the Kelly Avenue house and was heard speaking with a male inside before exiting shortly thereafter.  ECF No. 30-1, ▯ 17; ECF No. 37-1.  Investigators watched CS-1 return to a pre-determined meeting place where he surrendered "a quantity of Fentanyl" to law enforcement.  ECF No. 30-1, ▯ 17.  CS-1 said he purchased the fentanyl from Defendant with the $60 in APD funds provided.  ECF No. 30-1, ▯ 17.  CS-1 was searched again; no other drugs or money were found.  CS-1 also told police that Defendant was living at the Kelly Avenue address.  ECF No. 30-1, ▯ 18.

The affidavit next details an interaction that occurred with an individual, G.M., on an unspecified date.  Detectives observed G.M. leave the Kelly Avenue residence on foot.  When approached by police, G.M. attempted to flee but was immediately apprehended by officers, searched and found in possession of 6.6 grams of fentanyl.  ECF No. 30-1, ▯ 19.  Detectives also observed numerous other persons enter the residence and leave within minutes.  That type of foot traffic is consistent with drug trafficking and drug possession activities.  ECF No. 30-1, ▯ 20.

After reviewing the search warrant application and affidavit, an Akron Municipal Court judge granted the search warrant.  ECF No. 30-1.  APD executed the search warrant on the Kelly Avenue residence and found Defendant sitting on the couch in the living room.  A loaded revolver was on a nearby table and Defendant's DNA was later detected on the firearm.  Law enforcement seized a bag containing approximately 9.12 grams of cocaine from a crate situated next to the couch.  ECF No. 32 at PageID #: 162.  Officers also located a lock box in the living room air duct containing a scale, approximately 3.56 grams of fentanyl, and 16.63 grams of methamphetamine.  A pill bottle with Defendant's name on it was found in another room, and a

3

(5:25CR360)

shotgun was found inside a basement wall.  ECF No. 32 at PageID ##: 162–63.  APD also found

a wallet containing Defendant's state-issued identification card and $1,160 in cash.  Money

provided to CS-1 for the controlled buy—Bill A, Bill B, and Bill C—was recovered from the

wallet.  ECF No. 32 at PageID ##: 162–63; ECF No. 33-2; ECF No. 33-3.

During the evidentiary hearing, the Government proffered, without objection from

Defendant, Exhibit 4, Akron Police Street Narcotics Uniform Detail ("SNUD") Report Number

25SNUD009 ("SNUD Report"), authored in January 2025, detailing the controlled buy.  *See*

ECF No. 37-1.  Defendant acknowledged he had received a copy of Exhibit 4.  Officer R. Wood

#1591 authored the report, which states:

> Detective Reed 1313 and I, Officer Wood 1591, met with the I/S at
> approximately [redacted] hours.  The I/S was briefed and searched
> by Detective Reed.  The I/S was not in possession of any money,
> weapons, or contraband.  The vehicle the I/S was in was also
> searched, which did not contain any money, weapons, or contraband
> in the immediate area.  The I/S was then provided with precoppied
> [*sic*] APD funds and an electronic transmitting device to monitor the
> transaction.
>
> Sgt. Dugan 1185 and Detective Deitrick 1324 observed the I/S walk
> into the front door of [redacted] Kelly Avenue.  The I/S was heard
> making contact with a male inside of [redacted] Kelly Avenue at
> approximately [redacted] hours.  At approximately [redacted] hours,
> the I/S was observed by Detective Deitrick exit from the front of
> [redacted] Kelly Avenue.
>
> The I/S returned to pre determined [*sic*] location.  The I/S provided
> me with approximately .38 grams of Fentanyl.  This is the same
> substance that was purchased from Darron Portis, who was inside of
> [redacted] Kelly Avenue.  The I/S was debriefed and stated that they
> bought the Fentanyl from Darron Portis, inside [redacted] Kelly
> Avenue.  The I/S was then searched by me and did not possess any
> money, weapons, or contraband.
>
> The I/S was shown a photograph of Darron Portis, at which time
> they confirmed it was the male they had purchased the Fentanyl
> from inside of [redacted] Kelly Avenue.

4

(5:25CR360)

ECF No. 37-1 at PageID: 200.  Government's Exhibit 4 contains a photocopy of Bill A, Bill B, and Bill C, which had been provided to CS-1 for the controlled buy, as is described in the related report.  ECF No. 37-1 at PageID: 197.

## II.    DISCUSSION

Defendant raises three issues.  First, Defendant challenges the validity of the search warrant affidavit, claiming it contains false statements of fact concerning his involvement with the controlled buy and, therefore, necessitating a *Franks* hearing.  Next, Defendant argues the affidavit fails to connect the drugs seized from G.M. with the Kelly Avenue residence.  He further insists that the "unknown" number of short visits at the property are insufficient to support a probable cause finding.  Finally, Defendant claims that the controlled buy, G.M.'s stop, and the buy money discovered in his wallet during the search are stale and cannot support a probable cause finding.

As explained below, Defendant has not satisfied the two-pronged standard established in *Franks v. Delaware*, 438 U.S. 154 (1978) and, therefore, he is not entitled to such an evidentiary hearing.  Furthermore, Defendant's arguments challenging the probable cause affidavit are unpersuasive.  As explained below, Defendant's  Motion to Suppress (ECF No. 30) is denied in its entirety.

### A.  *Franks* Hearing

Defendant insists that the controlled buy never happened and that the statements identifying him are false.  The Court disagrees.

Affidavits supporting search warrants are presumed valid.  *Franks*, 483 U.S. at 171.  The decision of "[w]hether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound

5

(5:25CR360)

discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017).  A defendant is entitled to a *Franks* hearing when they "'make a substantial preliminary showing that the affidavit contains a knowing, intentional, or reckless falsehood,' and 'that the affidavit would not have established probable cause without the falsity.'" *United States v. Higgins*, 141 F.4th 811, 816 – 17 (6th Cir. 2025) (quoting *Sanders*, 106 F.4th at 471).  "A law enforcement officer's statement is only considered to be issued with 'reckless disregard for the truth' if a defendant shows that the affiant subjectively 'entertain[ed] serious doubts as to the truth of his [or her] allegations.'" *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (citing *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)).  A defendant "must accompany his allegations with an offer of proof.  Moreover, he also should provide supporting affidavits or explain their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citing *Franks*, 438 U.S. at 171).

In *Higgins*, the defendant argued he was entitled to a *Franks* hearing because the government's affidavit suggested that he was offering drugs to a confidential source through text messages but failed to preserve the messages cited.  *Higgins*, 141 F.4th at 817.  The court rejected this argument because, although the text messages were never revealed, the defendant presented no evidence suggesting the government was lying about the messages' content.  *Id.*  The court further concluded that the defendant's other messages with the confidential source corroborated the affiant's summary of the referenced messages.  *Id.*

Similarly, here, Defendant points to the fact that APD deleted the audio recording of the controlled buy and no longer has the buy money as proof that the controlled buy never happened, and that the statements in the affidavit identifying him are false.  ECF No. 30 at PageID ##: 147–48.  His argument is unpersuasive.  First, Defendant does not claim the statements describing the

6

(5:25CR360)

controlled buy were false or misleading.  He does not, for instance, challenge the statements that CS-1 received APD funds for the controlled buy, or that police watched CS-1 walk up to the Kelly Avenue house, enter, and leave with fentanyl.  *See* ECF No. 30-1, ⁋ 17.  He only challenges the statement detailing what CS-1 told police after the controlled buy.  Therefore, Defendant has not satisfied his burden to make a substantial preliminary showing that the controlled buy never happened.  Rather, the Government has proven, to the satisfaction of the Court, that the controlled buy occurred.

Defendant's argument that statements identifying him during the controlled buy are false is also unavailing.  First, regarding the audio recording from the controlled buy, the Government explained that the recording was deleted consistent with APD policies and in the interest of CS-1's safety.  ECF No. 32 at PageID #: 170.  It further explained that such recordings are used for safety purposes, not for supporting charges.  In any event, the affidavit in this case simply states that APD heard CS-1 speaking to a male in the Kelly Avenue during the controlled buy, and that CS-1 later identified that male as Defendant.  ECF No. 30-1, ⁋ 17.  It does not rely on the audio recording to identify Defendant; it merely relays what CS-1 told police.  As in *Higgins*, Defendant offers no evidence demonstrating CS-1 was lying, that police entertained serious doubts about the veracity of CS-1's statement identifying Defendant, or that police lied about what they heard or what CS-1 told them after the controlled buy.

Next, Defendant argues that there is little evidence connecting him to the controlled buy and takes issue with the fact that APD no longer possesses the buy money.  ECF No. 30 at PageID #: 148.  Although not physically available, the Government presented evidence demonstrating that the buy money was recorded (*i.e.*, photocopied) prior to the controlled buy and that a copy of the buy money was included in the APD's (SNUD) Report.  ECF No. 33-1;

7

(5:25CR360)

ECF No. 37-1.  The Government also presented evidence that the buy money was recovered from Defendant's wallet when the subsequent search warrant was executed.  ECF No. 33-3. Such evidence sufficiently contradicts Defendant's claim that he did not sell CS-1 fentanyl in exchange for control buy money.

Accordingly, Defendant has not met his burden to make a substantial preliminary showing that statements in the affidavit are knowingly or intentionally false or made with reckless disregard for the truth.  Furthermore, and as discussed below, even setting the controlled buy aside, the affidavit includes facts sufficient to support a finding of probable cause. Therefore, Defendant is not entitled to a *Franks* hearing.

**B.  Search Warrant Affidavit**

The Fourth Amendment mandates that search warrants may only be issued "upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  "[T]o establish probable cause for a search, an affidavit must show a likelihood of two things:  first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'"  *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n. 6 (1978)).  In other words, a warrant must be supported by an affidavit indicating "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search."  *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (citing *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).  Whether the affidavit demonstrates probable cause "depends on the totality of the circumstances."  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

8

(5:25CR360)

"The findings of the state court judge who issued the search warrant are entitled to great deference, and should be overturned only if they are found to be arbitrary." *United States v. Hernandez*, No. 2:15-cr-97, 2016 WL 5387692, at * 3 (S.D. Ohio Sept. 27, 2016) (citing *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)).  To determine if probable cause exists, the issuing judge must undertake a "practical, common-sense" evaluation of "all the circumstances set forth in the affidavit before him." *Gates*, 462 U.S. at 238.  A court looks "only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)).

The Court is unpersuaded by Defendant's argument that facts in the affidavit are too "vague, generalized, and insubstantial" to connect the drugs seized from G.M. with the Kelly Avenue residence.  ECF No. 30.  The Sixth Circuit recently held that probable cause exists when "officers, after observing a person leave a location, soon find the individual possessing contraband . . . suggesting that the illicit materials came from the location." *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024) (en banc) (collecting cases).  For example, in *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019), police conducted a traffic stop after observing an individual leave the defendant's house and discovered heroin in the individual's car.  *Id.* at 310.  Considering the defendant's ongoing drug trafficking activities, the court found that there was sufficient probable cause that the drugs found in the car came from the defendant's house. *Id*.  Although the court noted such evidence, on its own, was sufficient to establish probable cause, *see id.*, it also recognized the affidavit also relied on other information, including the defendant's ongoing drug trafficking activities, a controlled buy conducted at the defendant's house, and numerous tips about the defendant's drug dealing.  *Id.* at 311.  Considering the

9

(5:25CR360)

totality of the circumstances, the court concluded that the affidavit supported a probable cause finding.  *Id*.

In this case, APD was surveilling the Kelly Avenue residence and investigating Defendant for drug trafficking.  ECF No. 30-1, ¶¶ 15–16.  Defendant had a prior history of drug possession and drug trafficking.  ECF No. 30-1, ¶ 23.  As in *Christian*, that law enforcement watched G.M. leave the Kelly Avenue residence, which was under surveillance for drug activities, and found fentanyl in G.M.'s possession permits the inference that the drugs would be found in that residence.  ECF No. 30-1, ¶ 19.  This inference is further buttressed by APD's observations of "numerous subjects arrive on foot, enter the residence, and leave within minutes."  ECF No. 30-1, ¶ 20.  One individual leaving the residence—G.M.—was found in possession of significant amount of fentanyl.  ECF No. 30-1, ¶ 19.  While Defendant is correct that high-volume, short-visit traffic in and out of the house, alone, may be insufficient to establish probable cause, such activity may be sufficient when partnered with other corroborating evidence.  *United States v. Rutledge*, 819 F. App'x 377, 380 (6th Cir. 2020) (citing *United States v. Roberson*, 332 F. App'x 290, 295 (6th Cir. 2009)).  The short visits observed, G.M.'s stop and possession of fentanyl, along with the controlled buy that occurred inside the Kelly Avenue residence during which CS-1 obtained .38 grams of fentanyl from an individual later identified as Defendant, all corroborated the affidavit's concern that Defendant was trafficking illegal drugs.[1]  ECF No. 30-1, ¶ 17.  In other words, these facts, taken together, support a probable

---

[1] As discussed at length herein, Defendant's argument that the controlled buy never happened and that he was not the individual who sold CS-1 narcotics is unpersuasive.  *See* Section II.A.

10

(5:25CR360)

cause finding that evidence of ongoing drug trafficking would be found at the Kelly Avenue residence.

As earlier indicated, even if the Court were to set aside evidence of the controlled buy, Defendant's prior and ongoing drug trafficking activities (*see* ECF No. 30-1, ¶¶ 15–16, 23), APD's observations of numerous short visits (ECF No. 30-1, ¶ 20) to the Kelly Avenue residence, and the discovery of fentanyl on an individual APD observed to have recently exited the Kelly Avenue residence (ECF No. 30-1, ¶ 19) are sufficient to establish a "fair probability" that drugs would be found on the property.  *See United States v. Reed*, 993 F.3d 441, 454 (6th Cir. 2021) (quoting *United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017)) ("If an inference is obvious from the factual context, a reviewing court should indulge it.").  Accordingly, the Court concludes that the affidavit is sufficient to support a finding of probable cause.

### C.  Staleness

Defendant's final argument is that information included in the affidavit about G.M.'s stop, the controlled buy, and the money found in his wallet during the search was stale because these events occurred "within 10 days" of the search warrant application.  *See* ECF No. 30 at PageID ##: 146–47.  "Information is considered stale and unreliable if it is impossible to tell from the affidavit when the circumstances giving rise to probable cause occurred." *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016) (citing *United States v. Boyd*, 422 F.2d 791, 792 (6th Cir. 1970)).  In general, evidence of drug sales goes stale quickly because "drugs are usually sold and consumed in a prompt fashion." *Id.* (quoting *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010)) (internal quotations omitted).  Nevertheless, whether evidence is stale depends on: (1) the nature of the crime; (2) whether the criminal is nomadic or entrenched; (3) whether the items are easily transferrable; and (4) the place to be searched (*e.g.*, a criminal forum

11

(5:25CR360)

or an operational base). *United States v. Burney*, 778 F.3d 536, 540 (6th Cir. 2015) (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)).

The Sixth Circuit's analysis in *Burney* is instructive. In that case, police executed a search warrant based on an eight-month-old investigation into the property owner's ongoing drug trafficking and money laundering operations. *Burney*, 778 F.3d at 536. Looking to the four staleness factors, the court concluded that the months-old information included in the search warrant affidavit was not stale and supported a probable cause finding. *Id.* at 541 (citing *Frechette*, 583 F.3d at 378). First, the crime at issue involved large-scale, ongoing drug trafficking and money laundering operations. *Id.* Second, the property owner was "firmly entrenched" in the area and not engaged in nomadic or sporadic criminal activities. *Id.* Third, the evidence identified in the affidavit and sought by police "was not perishable in the way that, for example, a few crack rocks are perishable." *Id.* Rather, the evidence to be seized included anything that demonstrated the property was being used as a stash house. *Id.* Finally, the court noted that the property was being used as a secure base of operations. *Id.* The court then reiterated that the affidavit was not seeking evidence of a specific drug sale but, rather, was seeking evidence that the property was used for ongoing drug trafficking activities. *Id.* Accordingly, the court concluded that the months-old information supporting the search warrant was not stale.

In the present case, all four staleness factors weigh against Defendant. First, the crimes at issue in this case involve an ongoing drug trafficking operation. ECF No. 30-1, ¶¶ 15–16. Second, the affiant's statements demonstrate that Defendant's alleged criminal activity was ongoing and entrenched at the Kelly Avenue residence, rather than sporadic or nomadic. For instance, the affidavit details numerous suspicious short visits to the house, including G.M.'s,

12

(5:25CR360)

from whom police seized a significant amount of fentanyl shortly after he left the property.  ECF No. 30-1, ¶¶ 19–20.  Moreover, G.M.'s stop occurred within the same timeframe as the controlled buy, during which police confirmed that drug sales were occurring inside the Kelly Avenue house.  ECF No. 30-1, ¶ 17.  Third, the affidavit does not indicate that the police sought the proceeds or evidence of the controlled buy or any other specific drug transaction.  ECF No. 30-1, ¶¶ 17, 19.  Rather, the search warrant sought evidence of Defendant's ongoing drug trafficking activities, including items that are not easily transferred or destroyed, such as records and documents relating to drug transactions, including electronic storage devices (*e.g.*, computers, hard drives, and cellphones).  ECF No. 30-1, ¶¶ 10–12.  Finally, the affidavit's statements detailing the controlled buy, G.M.'s stop, and other short visits in and out of the Kelly Avenue residence indicate that the property served as a hub of operations for Defendant's alledged drug trafficking.  And, after completing the controlled buy, CS-1 confirmed to police that Defendant lived in the Kelly Avenue house.  ECF No. 30-1, ¶ 18.  Importantly, the affiant averred that, based on his training and experience, individuals engaged in ongoing drug trafficking frequently keep evidence of their criminal activities in their residences.  ECF No. 30-1, 3(p).

Although the affidavit does not specify when G.M. stopped or the controlled buy occurred, a common-sense evaluation of the affidavit demonstrates that both events occurred during the investigations between December 2024 and January 2025, if not "within the past 10 days" of submitting the warrant affidavit.  *See* ECF No. 30-1, ¶¶ 16–17, 19.  Even if the information about both G.M.'s stop and the controlled buy dated back to the beginning of the investigation, as in *Burney*, such information was included in the affidavit to show the Kelly Avenue residence was being used for ongoing drug trafficking activities, not to pinpoint a

(5:25CR360)

specific drug deal.  *See Burney*, 778 F.3d at 541.  Accordingly, the information about the controlled buy and the stop of G.M. was not stale.

Finally, Defendant's staleness argument concerning the buy money found in his wallet is not well taken.  The buy money in his wallet was not used to support a probable cause finding.  It is evidence, discovered during the warrant execution, that indicates Defendant was indeed the individual whom sold CS-1 fentanyl during the controlled buy.  This is proven because all three bills given to CS-1 for the controlled buy (*i.e.*, Bill A, Bill B, and Bill C) were recovered from Defendant's wallet.  ECF No. 37-1; ECF No. 33-3.  That the buy money was discovered "within 10 days" of the controlled buy does not make it impossible to determine where that money came from.  *See United States v. Yates*, 501 F. App'x 505, 511 (6th Cir. 2012) (finding information about ten-day-old drug transaction evincing ongoing drug trafficking activities was not stale).  Defendant offers no explanation why 10 days is too long to connect the money found in his wallet with the controlled buy, nor does he offer a legitimate explanation for why that money was otherwise in his wallet.  For these reasons and those stated on the record, the Court concludes that neither the buy money found in Defendant's wallet nor other evidence of drug trafficking found during the search was stale.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 30) is denied in its entirety.


IT IS SO ORDERED.


| December 22, 2025 | */s/ Benita Y. Pearson* |
| --- | --- |
| Date | Benita Y. Pearson<br>United States District Judge |

14